FILED IN CHAMBERS
U.S.D.C. Atlanta

APR 1 0 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANA THOMAS,

       Plaintiff,

    v.

BEVERLY HARVARD, et
al.,

       Defendants.

CIVIL ACTION

NO. 1:05-CV-1292-RLV

O R D E R

This is an action pursuant to 42 U.S.C. § 1983, in which the plaintiff also asserts state law causes of action. Pending before the court is the Fulton County defendants' motion for summary judgment [Doc. No. 22] and the Fulton County defendants' first motion to supplement their motion for summary judgment [Doc. No. 23].[1] The plaintiff has failed to submit a brief in opposition.

---

[1] The Fulton County defendants in this matter are Jacquelyn Barrett, Sheriff of Fulton County Sheriff's Department; Caudell Jones, Chief Deputy Sheriff of Fulton County Sheriff's Department; Major Berl Brereton, Head of the Office of Professional Standards Department of the Fulton County Sheriff's Department; Captain Orlando Whitehead, Second in Command of Internal Affairs Department of the Fulton County Sheriff's Department; Kirk Marham, Deputy Sheriff in the Fulton County Sheriff's Department; Scott Reese, Deputy Sheriff in the Fulton County Sheriff's Department; and Mike Kenn, Chairman of the Fulton County Commission, incorrectly referred to by the plaintiff as "President of the Fulton County Commissioners". For purposes of simplicity and readability, the Fulton County defendants will be addressed as the "Fulton County defendants" when referred to collectively. Fulton County Deputies Markham and Reese will be addressed as "Deputies Markham and Reese." The remaining Fulton County defendants will be addressed as the "Fulton County supervisory defendants." The local

## I. Procedural History

The relevant procedural history of this case was set forth in this court's previous order dated October 20, 2005 [Doc. No. 8]. The following facts are gleaned from the court's review of the record and Fulton County defendants' submissions.  The following facts are excerpted from the Fulton County defendants' Statement of Material Facts.[2]

On or about June 2, 2001, the plaintiff, Dana Thomas, was a patron of the defendant World Bar.  Defendant Margorie Rufenel, an employee of World Bar, identified the plaintiff as an individual who had passed a counterfeit twenty dollar bill.  After being approached by Atlanta Police Officer Timothy Robinson regarding Rufenel's allegations, the plaintiff fled the bar.  The plaintiff

_____

government of Fulton County will be addressed as "Fulton County."

[2] Pursuant to Local Rule 56.1(B)(2)(a)(2), the court deemed each of the Fulton County defendants' facts admitted because the plaintiff failed to file a response.  In addition to the Statement of Material Facts, the court examined various police reports submitted as exhibits in support of the Fulton County defendants' motion for summary judgment.  Under Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988), factual findings and matters observed by a public official, such as a police officer, contained in public records, such as police reports, can be allowed in as admissible evidence under the public records exception to the hearsay rule.  Id. at 169-70.  However, statements contained in police reports made by bystanders, witnesses, and other pertinent individuals are not allowed in as admissible evidence under Federal Rules of Evidence § 805.  See Joseph v. Kimple, 343 F. Supp. 2d 1196, 1204 (S.D. Ga. 2004).  Thus, the court considered the police reports submitted by the Fulton County defendants only to the extent that those police reports contained admissible evidence.

was then pursued by Atlanta Police Officer T.O. Robinson and Deputy Reese. Deputy Reese and Atlanta Police Officer Robinson struggled with the plaintiff until Atlanta Police Officers Thomas Owen Munson and Dennis Wilson came on the scene and took the plaintiff to the ground "head first." Regarding his role in the incident, Atlanta Police Officer Munson stated:

> We saw the suspect turn on Bolling Way and we turned to assist, when we turned the corner, we saw the suspect fighting with the Atlanta Officer and the Fulton County Deputy. He was swaying his arms and trying to pull away and not heed to their commands to stop resisting. I ran up and grabbed the suspect by the back of the shirt and took him to the pavement in order to try and get control of him. When I did this, it caused an injury somewhere on his head if I remember right.

Deputy Kirk Markham was also involved in the arrest. However, Deputy Markham's involvement was limited to handcuffing the plaintiff. Deputy Reese testified that the Atlanta Police Officers effectuated the plaintiff's arrest and made the case against the plaintiff. In the process of being arrested, the plaintiff suffered injuries to his eye and head. It is undisputed that Deputy Reese only assisted in the arrest made by Officer Robinson and he did not use a baton, flashlight, or other instrument to strike the plaintiff.[3]

In the Amended and Restated Complaint, filed on April 20,

_____

[3] In the plaintiff's Amended and Restated Complaint, the plaintiff alleges that the Atlanta Police Officers and Fulton County Deputies beat him after he was arrested and brought into custody. Additionally, the plaintiff has alleged in his statement to police that he was stuck with a flashlight.

2005, the plaintiff alleges that (1) Deputies Reese and Markham used excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment in effectuating his arrest (Count VII); (2) Deputies Reese and Markham deprived him of liberty without due process of law in violation of 24 U.S.C. § 1983 and the Fourteenth Amendment (Count VIII); (3) Deputies Reese and Markham committed the Georgia state intentional torts of assault, battery, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress (Counts IX, XI, XII, XIII, XIV); (4) and Deputies Markham and Reese violated the Georgia Constitution (Count X). In the body of the complaint, there are no allegations of any specific wrongdoing against the Fulton County supervisory defendants. On February 28, 2006, the Fulton County defendants filed a motion for summary judgment [Doc. No. 22]. The plaintiff has not filed a response.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that

the nonmoving party has failed to present evidence in support of some element of his or her on which he or she bears the ultimate burden of proof. Id. at 322-23.  Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.[4]

### III. Legal Analysis
### 1. 42 U.S.C. § 1983 Claims against Fulton County Supervisors

### a. 42 U.S.C. § 1983 Claims against Fulton County Supervisory Defendants in their Official Capacity

In this case, the plaintiff sued the Fulton County supervisory

---

[4] In this case, the plaintiff has failed to file a response to the Fulton County defendants' motion for summary judgment.  The court is cognizant that it can not base the entry of summary judgment on the mere fact that the motion was unopposed; rather the court must consider the merits of the Fulton County defendants' motion for summary judgment. See Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988). However, the court need not sua sponte review all of the evidentiary materials on file at the time an unopposed motion for summary judgment is granted.  Instead, this court must ensure only that the Fulton County defendants' motion for summary judgment is supported by evidentiary materials. Id.

defendants, i.e., Sheriff Barrett; Chief Deputy Jones; Major Brereton; Captain Whitehead; and Fulton County Commissioner Kenn in their official and individual capacities.

It is well-established that official capacity claims against the Fulton County employees are in actuality claims against Fulton County. Kentucky v. Graham, 473 U.S. 159, 166 (1985). To prevail on a § 1983 claim against a local government entity such as Fulton County, a plaintiff must prove both that his harm was caused by a constitutional violation and that the government entity is responsible for the violation.[5] City of Canton, Ohio v. Harris, 489 U.S. 378, 386-387 (1989). Thus in order to impose liability on the governmental entity, the plaintiff must show that the action was taken with "deliberate indifference" to the obvious consequences it would likely have on the plaintiff. Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375-1376 (11th Cir. 2000). To establish a "deliberate indifference claim," a plaintiff must present evidence that the governmental entity knew of a serious need to train, supervise, and otherwise act in a particular area and that the municipality made a deliberate choice not to take any action. Gold

---

[5] In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that municipalities may not be found liable under 42 U.S.C. § 1983 on a theory of respondeat superior. A local government or one of its agencies can be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury." Id. at 694.

v. City of Miami, 151 F.3d 1346, 1350-1351 (11th Cir. 1998).

Thus, Fulton County is not automatically liable under § 1983 even if it inadequately trained or supervised its Deputies and those Deputies violated the plaintiff's rights.   Instead, the United States Supreme Court has instructed the district courts in City of Canton that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under § 1983.   These "limited circumstances" occur only when the municipality inadequately trains or supervises its employees, this failure to train or supervise is a policy, and that policy causes the employees to violate a citizen's constitutional rights. City of Canton, 489 U.S. at 389-91.

In his Amended and Restated Complaint, the plaintiff alleges that Fulton County injured him because Fulton County knew or should have known that a pattern of widespread excessive force occurred in the Fulton County Sheriff's Department which put Fulton County on notice that there was a need to take corrective or remedial action. In their motion for summary judgment, the Fulton County defendants argue, "Plaintiff has not and can not show that a persistent and wide spread practice of constitutional violations have been committed by Fulton County Deputies."[6]

_____

[6] Specifically, the plaintiff alleges:

11.   The systematic pattern of conduct consists of a large number of individual acts of violence, intimidation and humiliation visited on plaintiff and other citizens

7

In this case, the plaintiff has failed to present any evidence, and the record is devoid of evidence, to create a genuine issue of material fact as to whether Fulton County had any "policy" that was the driving force behind Deputies Reese and Markham's alleged violation of the plaintiff's constitutional rights or that Fulton County was "deliberately indifferent" to the need to train or supervise its employees and Deputies in a particular area. Because the plaintiff has failed to present any evidence of a Fulton County "policy" which led to the violation of his constitutional rights, the plaintiff's § 1983 claims against the Fulton County Supervisory defendants, i.e., Barrett, Jones, Brereton, Whitehead, and Kenn, in their official capacities (which is in actuality a suit against Fulton County) fail as a matter of law.

### b. 42 U.S.C. § 1983 Claims against Fulton County Supervisory Defendants in their Individual Capacity

With respect to the claims against the Fulton County Supervisory defendants in their individual capacities, it is well-

---

by members of the Police Department of the City of Atlanta and Sheriff of Fulton County agents and employees of defendants acting in concert with persons unknown to plaintiff and under color of law. These acts of violence, intimidation, and humiliation while carried out under color of law have no justification or excuse in law and are instead gratuitous illegal and improper and unrelated to an activity in which police officers may appropriately and legally engage in the course of protecting persons or property, or ensuring civil order.

established that supervisory officials are not liable under § 1983 on the basis of respondeat superior. Braddy v. Florida Dep't of Labor and Employment Security, 133 F.3d 797, 801 (11th Cir. 1998). "Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Id at 802. The necessary causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id.

In the instant case, it is undisputed that the Fulton County supervisory defendants were not individually involved in the events that gave rise to this suit. Therefore, the plaintiff's claim of supervisory liability can be based only on the theory that the Fulton County supervisory defendants were "deliberately indifferent" to widespread abuse and that their "deliberate indifference" caused the plaintiff's constitutional rights to be violated. However as discussed above, the plaintiff has failed to proffer any evidence and the record does not reflect that there is a history of widespread abuse or a record of misconduct, physical

9

abuse, or excessive force which placed any of the Fulton County supervisory defendants on notice of a need to correct unconstitutional conduct.   Consequently, the plaintiff's § 1983 claims against the Fulton County Supervisory defendants, i.e., Barrett, Jones, Brereton, Whitehead, and Kenn, in their individual capacities also fail as a matter of law.

### 2. 42 U.S.C. § 1983 Claims against Fulton County Deputies Reese and Markham

### a. 42 U.S.C. § 1983 Excessive Force Claims Against Fulton County Deputies Reese and Markham in their Official Capacities

As the court discussed above, all of the plaintiff's claims against Fulton County employees in their official capacity are in actuality claims against Fulton County.   As discussed above, all of the plaintiff's § 1983 claims against Fulton County fail.

### b. 42 U.S.C. § 1983 Excessive Force Claims Against Fulton County Deputies Reese and Markham in their Individual Capacities

It is undisputed that Deputies Reese and Markham were the only two Fulton County defendants that had any contact with the plaintiff.   In Count VII, the plaintiff alleges that Deputies Markham and Reese violated 42 U.S.C. § 1983 and the Fourth Amendment when they used excessive force in effecting his arrest.[7]

---

[7] Specifically, the plaintiff alleges:

76. Kirk Markham and Scott Reese severe and debilitating beating of plaintiff Dana Thomas while he was under arrest and in custody was objectively unreasonable and

In Count VIII, the plaintiff alleges that Deputies Markham and Reese violated 42 U.S.C. § 1983 and the Fourteenth Amendment by depriving him of due process of law.

In Graham v. Connor, 490 U.S. 386, 395-396 (1989), the Supreme Court held that when the use of force by law enforcement officers arises in the context of an arrest, investigatory stop, or other seizure, the appropriate--indeed, sole--source of constitutional protection is the Fourth Amendment. In fact, the Graham court ruled that most excessive force cases born out of an arrest, investigatory stop, or other seizures of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under the Fourteenth Amendment's "substantive

---

constituted an excessive use of force in violation of the Fourth Amendment to the United States Constitution.

77. At the moment Kirk Markham and Scott Reese unlawfully delivered severe and debilitating beating of plaintiff Dana Thomas while he was confined in the custody and control of police officers, Dana Thomas suffered a violation of his federally protected rights prohibiting the city and State's use of excessive force.

78. At the time Kirk Markham and Scott Reese unlawfully delivered the severe and debilitating beating of plaintiff Dana Thomas causing severe and debilitating injuries, Dana Thomas was under arrest and in custody and posed no danger to the Defendants or to any member of the public.

79. At the time Kirk Markham and Scott Reese unlawfully delivered the severe and debilitating beating of plaintiff Dana Thomas causing severe and debilitating injuries Dana Thomas had a right to be free from unreasonable search and seizure.

due process" analysis. Id. at 395.   Therefore, the plaintiff's §
1983 claims based on a violation of the Fourteenth Amendment
against Deputies Reese and Markham in their individual capacities
contained in Count VIII of the Amended and Restated Complaint fail
as a matter of law.

In Count VII, the plaintiff asserts excessive force claims
against Deputies Reese and Markham.   Deputies Reese and Markham
argue that the doctrine of qualified immunity bars the plaintiff's
excessive force claim because when their actions are considered
from the perspective of a reasonable police officer given the
circumstances, the court must conclude that the amount of force
used in restraining the plaintiff was reasonable.   Additionally,
Deputies Reese and Markham argue that the plaintiff is not able to
overcome his burden of showing that they violated "clearly
established" law of which a reasonable officer should have known.
Given these arguments, therefore, the court must examine whether
Fulton County Deputies Reese and Markham are entitled to qualified
immunity.

"Qualified immunity offers complete protection for government
officials sued in their individual capacities if their conduct
'does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.'" Vinyard v.
Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) quoting   Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).   To receive qualified

12

immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002).

Here, it is undisputed that this incident occurred while Deputies Reese and Markham were assisting the Atlanta police officer in conducting an arrest of the plaintiff, who was fleeing the scene of a crime and resisting arrest. Therefore, the actions of Deputies Reese and Markham occurred pursuant to the performance of their duties and within the scope of their discretionary authority.

The United States Supreme Court has held that excessive force claims, whether deadly or not, in the course of an arrest, investigatory stop, or other seizure, should be analyzed under the Fourth Amendment and its "objective reasonableness" standard. <u>Graham</u>, 490 U.S. at 399. This standard requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interests alleged to justify the intrusion. <u>Tennessee v. Garner</u>, 471 U.S. 1, 7-8 (1985). The reasonableness of a particular use of force must be considered from the perspective of a reasonable officer on the scene rather than by employing 20/20 hindsight. <u>Saucier v. Katz</u>, 533 U.S. 194, 204-205 (2001). Whether the force is reasonable hinges on the facts and circumstances of each case,

"including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Police officers are often forced to make split-second judgments in circumstances that are "tense, uncertain, and rapidly evolving"-about the amount of force that is necessary in a particular situation. Graham, 490 U.S. at 396-397. Therefore, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. Id. Because "[g]overnment officials are not required to err on the side of caution," Marsh v. Butler County, Ala., 268 F.3d 1014, 1031 n.8 (11th Cir. 2001), qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful. See Saucier, 533 U.S. at 205-206.

Since the Fulton County deputies were acting in the scope of their authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). The Supreme Court has set forth a two-part test for qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002).   If a constitutional right would have been violated under the plaintiff's

version of the facts, the next, sequential step is to ask whether the right was clearly established. Saucier, 533 U.S. at 201-202. Under this two-step process, the court must first analyze whether the actions of Deputies Reese and Markham violated the plaintiff's constitutional rights when they assisted the Atlanta Police Officers in arresting the plaintiff.

Fulton County Deputies Reese and Markham argue:

> [A]lthough they were involved in the arrest, their involvement, as compared to the Atlanta Police Officers, was minimum and in no way in violation of clearly established law of which reasonable officers should have known. The Plaintiff was fleeing the scene of a crime and they simply assisted the Atlanta Police Department in arresting the Plaintiff. Defendant Reese's involvement was limited to helping the Atlanta Officers subdue the Plaintiff and Defendant Markham's involvement was limited to assisting in handcuffing of Plaintiff.

The undisputed facts in the record reflect that on or about June 2, 2001, the plaintiff was a patron of the defendant World Bar. Defendant Rufenel, an employee of World Bar, identified the plaintiff as an individual who had passed a counterfeit twenty dollar bill. After being approached by Atlanta Police Officer Robinson regarding defendant Rufenel's allegations, the plaintiff fled the bar.

The plaintiff was then pursued by Atlanta Police Officer Robinson and Deputy Scott Reese. Deputy Reese and Officer Robinson struggled with the plaintiff until Atlanta Police Officers Munson and Wilson came on the scene and took the plaintiff to the ground.

15

On this point, Atlanta Police Officer Munson stated:

> We saw the suspect turn on Bolling Way and we turned to
> assist, when we turned the corner, we saw the suspect
> fighting with the Atlanta Officer and the Fulton County
> Deputy.  He was swaying his arms and trying to pull away
> and not heed to their commands to stop resisting.  I ran
> up and grabbed the suspect by the back of the shirt and
> took him to the pavement in order to try and get control
> of him.  When I did this, it caused an injury somewhere
> on his head if I remember right.

It is undisputed that Deputy Markham was also involved in the

arrest  and  his  involvement  was  limited  to  handcuffing  the

plaintiff.   Deputy Reese testified that Atlanta police officers

effectuated the plaintiff's arrest and made the case against the

plaintiff.  The arresting officer was Officer Robinson.  It is also

undisputed that Deputy Reese assisted only in the arrest and did

not  use  a  baton,  flashlight  or  other  instrument  to  strike  the

plaintiff.

While the plaintiff's Amended and Restated Complaint contains

allegations that Deputies Reese and Markham physically assaulted

him after he was in custody, the plaintiff does not now dispute the

role  played  by  Deputies  Reese  and  Markham  presented  in  their

Statement of Material Facts.  Additionally in his police comments

regarding the incident, the plaintiff alleged that an unidentified

police officer or deputy struck him in the head with a flashlight.

Both Fulton County deputies deny this allegation, and the plaintiff

does not dispute their denial.  Therefore, the court limited its

inquiry into whether the undisputed facts contained in the Fulton

16

County defendants' Statement of Facts are sufficient to strip Deputies Reese and Markham of their qualified immunity.

Given the above facts, the court concludes that there was a need for Deputies Reese and Markham to apply some degree of physical force when they assisted in the arrest of the plaintiff. In this case, the record reflects that the plaintiff refused to cooperate, fled into a crowded street, and struggled with several officers before being subdued.  It is undisputed that Deputies Reese and Markham played a minimal role in the arrest of the plaintiff.  Deputies Reese and Markham only assisted the Atlanta Police Department in making the arrest of the plaintiff, who was fleeing the scene of a crime and resisting arrest.

On the record presented, Deputies Reese and Markham did not use excessive force in assisting the Atlanta Police Officer in effecting the plaintiff's arrest.[8]  Consequently, the court concludes that Fulton County Deputies Reese and Markham are entitled to qualified immunity with regard to the plaintiff's 42 U.S.C. § 1983 excessive force claim contained in Count VII of the Amended and Restated Complaint.

_____

[8] Having found that Fulton County Deputies Reese and Markham did not violate the Fourth Amendment's prohibition against the use of excessive force, the court found it unnecessary to examine the next step of qualified immunity analysis, i.e., whether the state of law gave the Deputies fair warning that their alleged treatment [of the plaintiff] was unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 741 (2002).  However even if the court had reached this issue, the court would have found that the state of the law did not give them clear warning that their actions were unconstitutional.

### c. Potential False Arrest Claim
### against Fulton County Deputies Reese and Markham
### Pursuant 42 U.S.C. § 1983

In the plaintiff's response to the City of Atlanta defendants'
motion for summary judgment and not to the current motion for
summary judgment filed by the Fulton County defendants, the
plaintiff argues that his arrest was unlawful and without probable
cause and therefore any force used by Deputies Reese and Markham to
make the arrest was unreasonable.    However, the plaintiff's
argument regarding any potential § 1983 false arrest claim fails
for several reasons.   First, the plaintiff does not dispute that
the Atlanta Police Officers made the arrest.   Second, the plaintiff
never asserted a false arrest claim pursuant to § 1983 in the body
of his Amended and Restated Complaint against either Deputy Reese
or Markham.[9]   Finally, even if he had brought a false arrest claim
pursuant to § 1983, Deputies Reese and Markham would be protected
by qualified immunity because "arguable probable cause" existed to

---

[9] Under Eleventh Circuit law, a claim that any force in an
illegal stop or arrest is excessive is subsumed in the illegal
arrest claim and is not a discrete excessive force claim. See
Williamson v. Mills , 65 F.3d 155, 158-159 (11   th  Cir.  1995).
According to Jackson v. Sauls, 206 F.3d 1156, 1170-1171 (11th Cir.
2000), Williamson's rule makes sense because if an arrest is
illegal, then there is no basis for any threat or any use of force,
and an excessive force claim would always arise but only
collaterally from the illegal arrest claim.   However, the plaintiff
in this case did not allege or plead a false arrest claim under §
1983 in his Amended and Restated Complaint.

make the arrest.[10]   Therefore, even if the plaintiff had alleged a
§ 1983 claim based on false arrest against Deputies Reese and
Markham, they would have qualified immunity from such claim.

### 3. State Law Claims
### a. State Law Claims against Fulton County

As discussed above, all of the plaintiff's claims against the
employees of Fulton County in their official capacity are, in
essence, claims against Fulton County.  Fulton County has moved for

---

[10] In deciding whether a police officer is entitled to qualified
immunity, the issue in a false arrest claim brought pursuant to 42
U.S.C. § 1983 is not whether probable cause existed but instead
whether there was "arguable probable cause" for the plaintiff's
arrest.  See Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir.
1999).   Because only "arguable probable cause" is needed, the
inquiry is not whether probable cause actually existed but,
instead, whether an officer reasonably could have believed that
probable cause existed, in light of the information the officer
possessed.  Id.   Law enforcement officials who reasonably, but
mistakenly, conclude that probable cause is present are entitled to
immunity.  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Given the facts of this case, Deputies Reese and Markham had
"arguable probable" cause to arrest the plaintiff.  In particular,
the evidence indicates that defendant Rufenel, an employee of the
World Bar, pointed directly to the plaintiff and shouted at Atlanta
Police Department Officer Robinson and Deputy Reese, "That's him.
That's the man who gave me the fake $20.00 dollar bill."   The
plaintiff heard Rufenel identify him and he ran from the uniformed
police officers, Robinson and Reese, even after they had shouted
for him to stop.   Additionally, the record reflects that the
plaintiff continued to run as the uniformed police officers chased
him.   Furthermore, the plaintiff admits that he struggled with the
Atlanta police officers and Fulton County deputies after he was
apprehended and that physical force was needed to take him down.
These facts provide Deputies Reese and Markham with "arguable
probable cause" to assist the Atlanta police officers in arresting
the plaintiff for forgery and obstruction of an officer charges.
The existence of  "arguable probable cause" provides Deputies Reese
and Markham with qualified immunity for any potential false arrest
claim brought pursuant to § 1983.

summary judgment on the state law claims brought against it on the basis that Fulton County is entitled to sovereign immunity. The doctrine of sovereign immunity is found in Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, as amended in 1991. Pursuant to this constitutional provision, counties and other political subdivisions of the State of Georgia are absolutely immune from suit for tort liability, unless that immunity has been specifically waived pursuant to "an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." Gilbert v. Richardson, 264 Ga. 744, 747 (1994). The Georgia Tort Claims Act provides for a limited waiver of the state's sovereign immunity for the torts of its officials and employees, but the Act expressly excludes counties from the waiver. O.C.G.A. § 50-21-22(5). Therefore, the Georgia Tort Claims Act does not divest Fulton County of its sovereign immunity. Because sovereign immunity can be waived only by a legislative act that specifically states that sovereign immunity is waived and the plaintiff has failed to identify any legislative act that waives the immunity of Fulton County in this action, Fulton County is immune from suit on the plaintiff's state law claims.

### b. State Law Claims Against Fulton County Deputies Reese and Markham in their Individual Capacities

In the plaintiff's Amended and Restated Complaint, the plaintiff alleges that Deputies Reese and Markham committed the

state intentional torts of assault, battery, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress (Counts IX, XI, XII, XIII, and XIV) and that Deputies Reese and Markham violated the Georgia Constitution (Count X).[11]   With respect to the state law claims made against the Deputies Reese and Markham in their individual capacities, Fulton County Deputies Reese and Markham argue that they are entitled to official immunity.  Whereas sovereign immunity applies to bar tort claims brought against counties and their employees acting in their official capacities, official immunity, as recognized under Georgia law, offers limited protection to public officials and employees from state tort claims brought against them in their individual capacities. See Woodard v. Laurens County, 265 Ga. 404, 406 (1995). Absent malice, willfulness, or corruption, a public officer is immune from suit for his discretionary acts. McDay v. City of Atlanta, 204 Ga. App. 621, 622 (1992).  Where the record is devoid of any evidence that a public official acted with willfulness, malice, or corruption, summary judgment is appropriate. City of Atlanta v. Chambers, 205 Ga. App. 834, 839 (1992).

In this case, it is undisputed that the Deputies Reese and Markham's actions in coming to the aid of fellow law enforcement

---

[11]The Restated and Amended Complaint does not contain any state law claims against the Fulton County supervisory defendants; therefore, the court limited its official immunity inquiry to Fulton County Deputies Reese and Markham.

officers to assist in making an arrest was a discretionary act. See Gilbert v. Richardson, 264 Ga. 744 (1994)(noting that a police officer's decision to rush to an emergency scene to aid her partner was a discretionary act). Thus, for the plaintiff to establish that Deputies Reese and Markham are not entitled to official immunity, he must show that they performed their discretionary acts with "actual malice." The term "actual malice," when used in the context of the official immunity doctrine, "requires a deliberate intention to do wrong." Crisp County School System v. Brown, 226 Ga. App. 800, 802 (1997).

In this case, the plaintiff has presented no evidence, nor is there any evidence in the record, that would allow a reasonable jury to conclude that Deputies Reese and Markham acted with "actual malice" or with intent to harm the plaintiff. The plaintiff's mere allegations and conclusionary statements contained in his Amended and Restated Complaint are not evidence, and such allegations are insufficient to withstand a motion for summary judgment. Thus, Deputies Reese and Markham are entitled to official immunity on the plaintiff's state law claims contained in Counts IX, X, XI, XII, XIII, and XIV, of the plaintiff's Amended and Restated Complaint.

### IV. Conclusion

For the reasons stated above, the Fulton County defendants' motion for summary judgment is **GRANTED** in its entirety [Doc. No. 22].  Additionally, the court **GRANTS** the Fulton County defendants' motion to supplement its motion for summary judgment [Doc. No. 23].


SO ORDERED, this _10th_ day of April, 2006.


_Robert L. Vining, Jr._
ROBERT L. VINING, J.R.
Senior United States District Judge

23